[No. 306.  Decided November 10, 1891.]

JAMES BLEECKER, *Respondent*, v. SATSOP RAILROAD COMPANY, *Appellant.*

APPEAL—AMOUNT IN CONTROVERSY—PRINCIPAL AND AGENT—AUTHOR-ITY OF AGENT TO BIND PRINCIPAL.

The provision of art. 4, § 4 of the constitution, limiting the appellate jurisdiction of the supreme court in civil actions to cases where the original amount in controversy does not exceed the sum of two hundred dollars, has application to the amount sued for, and not to the judgment rendered.

Where the manager of a tug boat has been engaged to send his tug with a scow to transport certain hay, he cannot bind his principal by authorizing a third party to take another tug, hire a scow and remove the hay, so as to make his principal liable for the services of such scow, or for damages for injury to her while so employed.

The indorsement on the bill of the tug boat for such services and damages, viz.: "Payment refused until matter of freight and loss of c rgo of steamer Quickstep is adjusted," cannot be construed as a ratification of the contract, or as an acknowledgment of liability for damages.

*Appeal from Superior Court Pierce County.*

Action by James Bleecker against the Satsop Railroad Company to recover for the rent of a scow and for injuries while in its alleged use by defendant. Judgment for plaintiff, and defendent appeals.

*Doolittle, Pritchard, Stevens & Grosscup,* for appellant. *Crowley & Sullivan,* and *Judson & Sharpstein,* for respondent:

Every delegation of authority, whether general or special, express or implied, carries with it the power to do all those things which are necessary, usual and reasonable to be done in order to effectuate the purposes for which it was created. Mechem, Agency, §§ 294, 309, 311, 314, 315; *LeRoy v.*

*Beard,* 8 How. 451; *Joyce v. Duplessis,* 15 La. Ann. 242; 77 Am. Dec. 185; *National Bank v. Merchants' Bank,* 91 U. S. 92; *Very v. Levy,* 13 How. 345. . A sub-agent may be employed where the duties of the agent are mechanical or ministerial, or where the circumstances necessarily require the employment as such agents. Mechem, Agency, §§ 193, 194, 284, 749; *Bodine v. Exchange Fire Ins. Co.,* 51 N. Y. 117; 10 Am. Rep. 566. *Renwick v. Bancroft,* 56 Iowa, 527; *Bartlett v. Sparkman,* 95 Mo. 136; 6 Am. St. Rep. 35.

The opinion of the court was delivered by

DUNBAR, J.—Plaintiff in the court below brought his suit to recover the sum of $670 as damages for the use of a scow. The answer of defendant was a general denial. Judgment was recovered by the plaintiff for the sum of $156 damages, together with costs and disbursements, taxed at $157.45. From this judgment defendant appealed. Respondent moves to dismiss the appeal for the reason that the net amount in controversy does not amount to $200, and that the supreme court has no jurisdiction to hear or determine the appeal. The limiting words in article 4, § 4 of the constitution are:

" Excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property, does not exceed the sum of two hundred dollars ($200)."

Some decisions were cited under statutes of limitation of jurisdiction which hold that the matter in dispute was the amount of the judgment, and not the original amount sued for; and that, although the action was for more than the jurisdictional amount, when the verdict was for less, the controversy in relation to the original amount had ceased, and that the court would not take jurisdiction of it on appeal; but those cases were all under statutes where the

language was " the amount in controversy," and the intent of the law was probably sustained by the decisions; but the language of our constitution excludes the idea of the amount in controversy at the time the case reaches the supreme court. It says the "original amount in controversy." The word "original" is a word of plain import and well-understood meaning, and will hardly bear construction in this connection. The "original amount in controversy" can mean nothing more nor less than the amount originally in controversy, or, in other words, the amount sued for. We think the court has jurisdiction. The motion is overruled.

On the 17th day of August, 1889, A. H. Anderson, the general manager of the defendant corporation, sent to the Pacific Mill Company a telephone message in these words:

"SHELTON, Aug. 17th, 1889.—To Pacific Mill Company, Tacoma, Wash.: Tell Pritchard to send tug Rip with scow to Webb's ranch, Skokomish river, for fifty tons of hay. Must be removed at once.—A. H. ANDERSON. 23 Satsop Acct."

It appears that Pritchard was the agent and manager of a steam tug named "Rip Van Winkle," and was by means of said tug doing a general towing business on Puget Sound; that he was secretary of the Pacific Mill Company; and the message was probably sent to the Pacific Mill Company on the theory that they would know his whereabouts, and forward the message to him in case of his absence. At all events the message was duly received by Pritchard; but his tug, the Rip Van Winkle, was then engaged in other service, and, believing from the tone of the message that defendant's hay required immediate removal —which supposition the testimony afterward showed to be true—he, according to his testimony, communicated to one J. S. Cook the fact that the Satsop Railroad Company desired to have fifty tons of hay moved from Webb's ranch

to Shelton, and asked him if he could not move it. Cook was at that time managing a small fleet of steam tugs on the Sound. He took the tug Quickstep, and, hiring a scow of plaintiff at a certain stipulated sum, proceeded to move the hay. Cook, however, testifies that he was simply employed by Pritchard to do the work. However this may be, Cook, while moving the hay, had to leave the tug to obtain fuel. On coming back it was discovered that the scow had sprung a leak, and that both the hay and the scow were damaged—the hay to such an extent, as claimed by defendent, that it would not receive it. Plaintiff thereupon brings his action against the defendant, the Satsop Railroad Company, to recover the sum of $5 per day for the use of plaintiff's scow for a certain number of days, upon an alleged contract between plaintiff and defendant; for $10 per day for a certain number of days; and for damages caused by the detention of the scow, and for damages by the injury of the scow; the whole demand for judgment being $670. It seems that when this case is stripped of all immaterial matter there can be but two propositions to consider: *First*, Was Pritchard constituted an agent of the Satsop Railroad Company at all? and, *second*, if he was so constituted, was it such an agency as he could transfer to others to the extent of binding his principal by their acts?

Conceding for the present that Pritchard was the agent of the defendant, it would be well to keep in mind a few fundamental principles or elementary rules governing the law of agency. (1) An agent must act within the scope of his authority. (2) Every person dealing with an assumed agent is bound at his peril to ascertain the nature and extent of the agent's authority; and it follows that, if the agency and authority are denied by the principal, the burden is upon the party attempting to bind the principal to prove both. (3) As the authority of an agent emanates

from the principal, he may impose upon it as many lim-
itations as he sees fit; and third parties dealing with
agents must deal within those limitations. Of course this
rule does not apply where parties deal with reference to
the apparent authority of the agent, and where the limi-
tations are secret, and of which they had no notice.
(4) The appointment of an agent is presumed to be
prompted by the knowledge of, or faith in, the fitness of
the agent for the performance of the duties imposed;. and
upon this presumption is based the general rule that, in
the absence of any authority, either express or implied,
to employ a sub-agent, the trust committed to the sub-
agent is presumed to be exclusively personal, and cannot
be delegated by him to another, so as to affect the rights
of the principal. Applying these fundamental principles
to the case at bar, and at the same time recognizing the
doctrine that no inflexible rule can be applied to all cases;.
but that each case depends largely upon the circumstances.
surrounding it, we must conclude that there are no cir-
cumstances surrounding this case taking it out of the
general rule; and Pritchard had no authority to bind the
Satsop Railroad Company by the contract he is claimed
by the plaintiff to have made with Shaw, who employed
and hired plaintiff's scow to remove the hay of defend-
ants. Especially is this true in view of the well settled
rule "that the authority of the special agent must be
strictly pursued." In speaking of the distinction between
the powers of a special agent and those of a general
agent, Mr. Mechem, in his work on Agency, § 285, says:

"But it is none the less true that the scope of the au-
thority of a special agent is ordinarily much more restricted
than that of a general agent. The fact that the authority
is conferred in a special instance to do a specific act nat-
urally leads to, if it does not positively require, much more
minuteness of direction and much greater restrictions and

6—3 WASH.

limitations. From the very nature of the case particularity of instructions and singleness of method are to be expected, and of this persons dealing with the agent may well be required to take notice."

Again, in § 709, the same author says:

"The true distinction between general and special agents lies, then, as has been stated, in this, that the apparent scope of the special authority is naturally and necessarily a limited one. Of these limitations its very nature gives peculiar warning, to which the persons interested must give heed."

All the authority that was conferred in this case was that contained in the telephone message referred to. It was simply to transfer a certain lot of hay. It was not even an unqualified order to transfer it, but it was an order to transfer it in a certain way, by a specified medium of conveyance, viz., the tug Rip Van Winkle. If we adopt the theory that the defendant was to be responsible for the conveyance, then the doctrine of choice must obtain. Being a bailee for the vehicle of conveyance, it would be a hard rule that would deprive defendant of the right of selection. Assuming that risk, defendant may be presumed to have selected the tug Rip from a knowledge of its fitness for the work in hand. All tug boats are not equally safe or serviceable. In this case we may fairly presume that, if the instructions had been followed, the damage both to the hay and scow would have been avoided.

This case does not fall within the rule governing a class of cases where the work to be done was purely administrative, and where there was no judgment or discretion to be exercised, or where the deviation was slight and small. Conceding that Shaw's testimony is true, it was not competent, and should not have been admitted. To have the effect of binding the principal, a statement must have been made in respect to a matter within the scope of the agent's

authority. The rule also laid down by Mechem on Agency, § 716, is as follows:

"The fact of the agent's authority can neither be established, nor can its scope or effect be extended or enlarged, by his own statements, representations, or declarations, so as to charge the principal. There must be first a *prima facie* showing of his authority by other evidence before the admissions, declarations, or representations, if otherwise competent, can be admitted."

"The authority of a supposed agent cannot be established by his own declarations." 1 Amer. & Eng. Enc. Law, 351.

No inflexible rule can be laid down by which all cases can be decided. In every case it becomes a mixed question of law and fact, to be considered with reference to the peculiar facts and circumstances of the case. Here all the circumstances or facts showing authority was the telephone message. The construction of that message was the province of the law; and its proper construction, as we view the law, is that it did not confer the authority to bind the defendant, as claimed by respondent. Neither do we think there is any testimony which could be construed as proof of ratification. The indorsement on the bill of the Quickstep, viz., "Payment refused until matter of freight and loss of cargo of Stmr. Quickstep is adjusted," cannot be held to be anything more than an acknowledgment of their indebtedness for services rendered, and is in no sense an acknowledgment of liability of damages of any kind. But back of all this, even had Pritchard responded to the proposition of defendant, and transferred the hay by means of the tug Rip and any scow he might have seen fit to employ, his relation to the defendant could not have been other than a common carrier; and in no sense could the defendant have been held as a bailee of the tug or of the scow. It would have been held for the value of the services, but there its responsibility would have ended. With

this view of the law the instructions of the court become immaterial. There being no competent testimony to establish the responsibility of the defendant, the motion for nonsuit should have been allowed.

The judgment is reversed, and the case remanded to the lower court, with instructions to grant the nonsuit asked for by defendant.

ANDERS, C. J., and HOYT, STILES and SCOTT, JJ., concur.