[No. 3530.   Decided June 27, 1902.]

GEORGE KIRBY, *Respondent,* v. RAINIER-GRAND HOTEL
COMPANY, *Appellant.*

APPEAL — AMOUNT IN CONTROVERSY — HOW DETERMINED.

The constitutional provision limiting the jurisdiction of the
supreme court on appeal to cases where the amount in contro-
versy exceeds $200 applies to the amount sued for and not to
the judgment rendered.

NEGLIGENCE — INJURIES TO SERVANT — DEFECTIVE ELEVATOR — NON-
SUIT.

In an action for damages for injuries received from the fall
of a freight elevator plaintiff should be non-suited when the only
negligence alleged was that "the elevator through want of proper
repairs and a sufficient brake immediately dropped to the bot-
tom," and the evidence shows that the elevator was not out of
repair nor defectively constructed; but that plaintiff went on
the elevator without being required so to do by the defendant
as a part of his duties, and, in ignorance of its mechanism, at-
tempted to operate it, causing it to fall.

SAME — INSTRUCTIONS.

Where there was no evidence that the construction of an
elevator was complicated and dangerous, it was error for the court
to charge the jury as to the duty of defendant to give plaintiff
notice of its complicated and dangerous character.

Appeal from Superior Court, King County.—Hon.
ORANGE JACOBS, Judge.   Reversed.

*Bogle & Richardson,* for appellant.

*Herbert E. Snook,* for respondent.

The opinion of the court was delivered by

WHITE, J.—Respondent brought this action against
the appellant for the sum of $500 for personal injuries
received by him while in the employ of the appellant.
The facts are fully set out in the evidence hereinafter re-

45—28 WASH.

ferred to. The third and fourth allegations of the complaint are as follows:

"3.   That heretofore, towit, on or about the 10th day of July, 1899, this plaintiff, while regularly in the employ of the defendant as dishwasher in its said hotel, attempted to ride upon the elevator in said hotel building which connects the second floor upon which is located the kitchen, with the basement of said building, two stories below; that it was necessary for plaintiff to ride upon said elevator from said second floor to the basement in order to convey freight; that immediately upon entering said elevator, said elevator, through want of proper repairs and a sufficient brake, immediately dropped to the bottom with such violence and force that this plaintiff was thrown against a barrel which was upon said elevator, whereby the right side of his face was badly bruised and his right eye severely cut, in so much that it was necessary to have medical assistance and stitches taken in the gash which was cut over his right eye as aforesaid, and that by reason thereof this plaintiff suffered great pain and was necessarily confined in the hospital for a period of one week.

"4.   That the defendant had knowledge of the dangerous and defective character and condition of said elevator at the time this plaintiff sustained his said injury, and negligently and carelessly permitted the said elevator to remain and continue in its said dangerous and defective condition; that by the exercise of ordinary care the defendant could have placed said elevator in a safe condition, but that, notwithstanding that the defendant knew of the dangerous and defective condition of said elevator, no notice whatever was given to this plaintiff of its said condition, and the defendant negligently and carelessly permitted this plaintiff to use and ride upon said elevator in its said dangerous and defective condition, whereby this plaintiff was injured as aforesaid."

Upon the trial the jury returned a verdict of $250 in favor of the plaintiff. A motion for a new trial was made, and the court directed the respondent to remit $150, which

respondent did.    Thereupon the motion was overruled, and judgment was accordingly entered against the appellant for $100, from which judgment the appeal is taken.

The respondent moves the court to dismiss the appeal because as to the defendant the real amount in controversy is less than $200.    The motion is denied on the authority of this court laid down in *Trumbull v. School District*, 22 Wash. 631 (61 Pac. 714), and *Bleecker v. Satsop, R. R. Co.*, 3 Wash. 77 (27 Pac. 1073).

The respondent and witnesses Ferris and Kinnoa testified in chief.    The respondent testified that he went to work for the appellant in the kitchen of its hotel as a dishwasher the day of the accident; that he had never been there before; that three barrels of slop were on the elevator, and that they were to be sent on the elevator to the basement; that he got on the elevator; that as soon as he stepped on and touched the rope the elevator went "flying to the bottom," thereby causing the injury; that he had never been on it before; that the man who was there before him (Kinnoa, another dishwasher) was there at the elevator, and that no one told him not to get on, and that he thought Kinnoa knew it was all right; that he grabbed the rope,—the check line; that he could not stop it; that the rope ran through his hands, and burnt them; that he was told by Kinnoa to get on the elevator; that, as soon as he stepped on and drew the check line, it went right down; that it commenced dropping before he pulled the check line; that he tried to stop it by pulling the check line; no one, he says, told him not to get on the elevator; nobody said anything to him about it; that no warning was given to him about the elevator; that the elevator was six feet wide and six feet deep; that he believed it was out of order; that he did not know what was out of

order, something the matter with the weights; could not see the weights; did not see anything broken; just thought there was something the matter. He also testified as to the nature of his injuries. Ferris, who went to work that day with the respondent as a dishwasher, testified that the night before he saw a man who used to run it go down in the elevator with a load; that he appeared to go down all right; that there was no notice not to ride on it at that time; that, so far as he could see, the elevator was in good repair; that, after the elevator fell with respondent, the engineer worked at fixing it; that after it was fixed a load was sent down on it, and it broke down. Kinnoa, a Sandwich Islander, testified that he had never ridden down on the elevator, but that he had seen one other ride down; that he had often seen three barrels of slop on it; that he (Kinnoa) was standing by the elevator when the respondent got on; that he did not tell the respondent to get on; that nobody told him to get on.

"Q. How did the elevator work that day? A. Well, the other man was quit there—the elevator worked all right. Of course George [respondent] a stranger—he don't know how to ride the elevator and he dropped down the elevator."

That the elevator worked all right until respondent got hurt; that after the accident they put a sign on the door, "Do not ride on the elevator." On cross-examination this witness testified:

"Q. What did he [respondent] do when he got on there? Did he pull the string or rope? A. Well, I was holding the string. I told him, that is a brake of the elevator, and I gave him the rope—told him to look out for that, it will brake—pull it hard and then it will stop it; and he get a-hold of the rope and he let go a little and it dropped right down. Q. You told him to hold the rope, that was the brake, did you? A. Yes, I did. Q. And

what did you say he did—he let go of it? Did you say he let go? A. Yes, he let go a little bit—slacked a little. Q. And that is what made it drop, is it? A. Yes, sir. Q. If he had held on to the rope it wouldn't drop, would it? A. I don't know, because I know that boy was there, he took that little rope; of course that is the brake—when he pulls it it stops it. Q. When George let loose of that little rope—the brake—it dropped, did it? A. I don't know; may be he turned it loose or he didn't. He was holding the rope. I don't know whether he was holding hard or not, but it dropped right down. Q. You said just now he turned it loose and that was what made it drop, didn't you? A. Well, I believe he did turn it loose. Q. (By Mr. Snook) You mean then that when the brake is on it holds the elevator? A. Yes. Q. And you have to let loose of that brake in order to let the elevator go down anyway—that is what that brake is there for, is it? A. Yes."

The foregoing is substantially all the testimony in chief introduced by the respondent.

The testimony of the appellant was substantially as follows: Stevenison, the head dishwasher, in charge of removing the refuse, testified: That he told respondent the night before, when he first came to work, how to work the elevator, and how to let it down; and in the morning when the respondent was about to take the load down he warned him not to get on the elevator. This conversation was in the presence of witness Ferris. He had never seen any one else ride on it, and did not know that any one else rode on it. That he showed Kinnoa how to work the elevator, and told him not to ride on it. That the elevator, by the carelessness of operators with the brake, had fallen before. That the sign had always been up on the inside of the door of the elevator shaft, which was in plain view when the door was open, not to ride on the elevator. That the elevator did not work right after it fell with respondent, but

always worked right before. That one stood by the side of the elevator to operate it. Shuffleton, a mechanical engineer, testified that the elevator was a simple hand device, apparently constructed for handling freight only. Its general operation is this: A manila rope about an inch in diameter passing over a wheel at the top of the shaft, which is pulled by hand for raising a barrel or whatever weight may be on the cage. Its speed in going down is governed by a small hand rope, probably one-half inch in diameter, which passes down the shaft alongside of the cage. The operation of that brake is such that, if a person were riding on the cage, it would be absolutely necessary for him to keep a firm hold on the rope. If he once lost hold of that little rope which controls the brake, there would be nothing to prevent the machine from rapidly running to the bottom at high speed, with probable injury to the machine and the person riding it. That such would be the result if the machine was in perfect condition. Its construction was such apparently from the beginning. It was plainly apparent in its construction that it was never intended for people to ride in, because it would require a great deal of skill for a man to handle the rope while in the cage; for, if he once lost control of the rope, he would find himself in considerable danger. That the elevator was a hand elevator, and was operated by the hands pulling it up with a rope and letting it down with the brake rope. The cage was about three and one-half by three feet,—a very small machine. The weight it would carry would depend upon the supporting device. This machine was safe at one thousand pounds and would carry this with the brake properly operated. It would drop with no weight on it if the rope that works the brake was manipulated in a wrong manner. As the elevator moves downward, it would

be necessary for the operator to let the rope which controls
the brake slip through his hands, and at the same time
maintain tension enough to let it down. If he should let
it get the start of him, he could never catch it again. The
operator stands stationary on the floor above. The brake
rope is stationary. He has the rope in his right hand.
It does not slip through his hand. Eagles, stationary
engineer in the employment of appellant at the time of
the accident, testified that about an hour after the acci-
dent he examined the elevator.

"Q. What condition did you find it in? A. Found it
all O. K. except the cable came off from the vibration of
the cage going down. Q. The cable came off the sheave?
A. Yes, when the cage struck in the cellar it rebounded to a
certain extent and the cable came off of the sheave. All I
had to do was to pick the cable up and put it on the sheave."

The size of the cage, he testified, was about three feet
by three feet. The elevator operated by a hand device,—
manila rope passing over wheels, one on the top and one
below, operated with a hand brake; brake rope made fast
to it, running full length of the shaft. "To operate the
elevator you must stand on the kitchen floor and when you
start your load you slack away on the brake, and when she
is lowered to the cellar you are supposed to come down
stairs and unload, and you must go back to the kitchen to
raise the cage. You can't raise the cage from below. A
man that was skilled and would not get excited could let
himself down; but if the cage got to making a great ve-
locity, of course he would burn his hands. He couldn't
hold on to the rope. Had seen one man (George) ride
down. Warned him, if he kept that up, he would come
down some day fast." Palmer testified that there was a
notice on the door before the accident to the effect, "All
persons are prohibited from riding on this elevator."

Woods testified as to the notice being on the door before the accident. Dixon testified he heard Stevenson tell respondent just before the accident, not to ride on the elevator. Gibson testified to the same effect, and also as to the notice on the door. Harrison testified as to the notice on the door. Dr. Kloeber, the surgeon who attended the respondent, testified that respondent told him he stepped in the kitchen elevator, and the thing went down, and he burnt his hand with the rope as it slid down; that respondent had an incised wound over the right eye, quite a severe burn on his hands, the face and forehead a little bruised. Johnson testified that he heard Stevenson warn respondent just before the accident not to get on the elevator.

In rebuttal the respondent denied that Stevenson explained to him how to run the elevator, or that he warned him not to ride on it, and that there was a notice on the door. The reason he got on was because Kinnoa told him to get on, and said it was all right. Never had seen a contrivance of the sort. Came to work in the afternoon before the accident. He did not put the slops on the elevator. They were there when Kinnoa told him to go down with them. Ferris testified that there was no notice on the door. Kinnoa testified that there was no notice on the door; that the notice was put up the next day, after the respondent got hurt; says no one told respondent to ride down.

"Q. He [respondent] told you that? A. He tell me to ride the elevator down—he ride the elevator down. Q. Who told you to ride the elevator down? A. George says, he says: 'I go down the elevator'—says all right, and he stepped on the elevator platform and then I was holding the rope and I gave it to him and told him 'that is the brake,' and he got a-hold of that rope—he couldn't hold it—it dropped right down."

The foregoing is, in effect, all the testimony in the case. The only substantial contradiction between the respondent's and the appellant's testimony is as to the notice on the door and as to whether Stevenson warned respondent not to ride on the elevator. The respondent says Kinnoa, a dishwasher, like himself, in the employment of the appellant, told him to go down with the slops. Kinnoa, his own witness, denies this. At the close of the testimony, and after the giving of instructions by the court, a peremptory instruction to find a verdict for the appellant was requested, because there was no allegation in the complaint of lack of notice, or as to dangerous machinery. The only negligence alleged was the use of machinery out of repair. There was no proof to sustain such an allegation. The instruction was denied, and an exception was taken. The court, among other instructions, instructed the jury as follows:

"Every person who uses machinery or other appliances to carry on his business owes it to his employee, first, so far as the construction of that machinery or these appliances are concerned, that they shall be reasonably safe, and he is under obligations to keep them in that condition. The machinery of itself, or these appliances, may be safe in its construction, but its use may be complicated. There are some propositions that apply to that. .    .    .    .
If the use of appliances—the use of them is complicated and dangerous, then notice must be given to the employee. One of the important questions for you to decide in this case is was notice given by the other employees, other persons employed by this corporation, as to how this elevator was to be used, or was it apparent from looking at the elevator to a man of ordinary prudence as to what its safe use was? If there were ropes on the outside and they were the proper instruments by which this elevator should be used, and that was apparent, why, then, this man, if he neglected to make use of those ropes, was guilty of

negligence himself and brought whatever injury he received upon himself, and he cannot hold the other party responsible for that injury, but if you are of the opinion that the proper way to use this elevator was not apparent to an individual, then the question of notice presents itself. The elevator, the evidence shows, could be used by a careful and skillful man by going inside of the elevator and going down with the material sent down with it, but that being a dangerous use of the elevator, as I said before, here is where the question of notice comes in.   If he was notified—if his attention was called to it, why he was bound at least to make inquiries, where the danger is not evident, apparent, manifest.   If the danger is manifest, is apparent, can be seen, or if it is so manifest or apparent as to put a person upon inquiry, why then it is in the sense of the law open and apparent.   Under those circumstances no notice is required, but notice is, when the danger is latent and concealed and the person, the discharge of the duty which he was employed to discharge requires him to use these instruments."

To this instruction an exception was taken.   The refusal to peremptorily instruct the jury in favor of appellant and the giving of the instruction quoted are assigned as error. There is no testimony whatever supporting the allegations of the complaint, or tending to support the same, "that it was necessary for plaintiff to ride upon said elevator from the said second floor to the basement in order to convey freight."   There is no testimony that the "elevator through want of proper repairs and a sufficient brake immediately dropped to the bottom."   The testimony is that the purpose for which it was to be used was open and apparent, and that it was in proper repair.   There is no testimony whatever that it was defectively constructed, or its use was complicated, or that it was not in a safe condition for the purpose for which it was intended.   The going upon the elevator by the respondent was not caused

by the appellant. It was caused, as appears from the testimony of respondent, by the advice of a fellow servant; otherwise through the recklessness of the respondent. We think the motion for a peremptory instruction should have been granted. There was no proof, and there was no allegation in the complaint, that the elevator was defective in construction or that its use was complicated and dangerous. The part of the judge's charge excepted to dealt with the construction and complicated or dangerous use of the elevator. There was no testimony that the elevator was out of repair. It is an established principle of law that the instructions to a jury must be based upon and be applicable to the pleadings, and that instructions not based on the pleadings will be ground for reversal, if there is the least tendency to mislead. In the case of *Bernhard v. Reeves*, 6 Wash. 424 (33 Pac. 873), the damages were alleged to have been caused by the leakage of water from a water-closet, and the only allegation of negligence was that the closet was out of repair. The court instructed the jury on the theory that the construction of the closet was defective. This court, in its opinion, said:

"This instruction would have been too broad if within the issues made by the pleadings, and, as the jury may have founded their verdict upon this particular instruction, the appellant would have been entitled to a reversal; and for the greater reason was the giving of such instruction prejudicial error when we take into consideration the fact that, under the pleadings, neither the court nor jury had anything to do with the character or kind of closet placed in the building."

In the case at bar not only was there no allegation that the elevator was defective in construction, or complicated or dangerous in its use, but it is to be strongly inferred from the complaint that the reverse was true, for in the

fourth paragraph of the complaint it is alleged that defendant could have placed said elevator in a safe condition. The instruction in question probably misled the jury. Had the court merely instructed the jury on the only question raised by the pleadings,—as to whether the elevator was out of repair and wanting in a sufficient brake,—the jury must have returned a verdict for the defendant, for there was not the slightest proof of those allegations made on the trial. The elevator was loaded, and fell because the brake was not applied after the elevator was started, and not because the elevator was out of repair, or the brake insufficient, as alleged in the complaint. The slipping of the cable from the sheave was the result of the fall of the cage. Not only was there no proof that the elevator was out of repair and the brake insufficient, but all the evidence in the case shows clearly that both elevator and brake were in good condition and repair. Plaintiff's own witness Kinnoa testified that the elevator worked all right until after plaintiff was hurt, and other witnesses testified that the elevator was in good condition.

We think that this case falls squarely within the rule laid down in *Bernhard v. Reeves, supra;* that there was not even evidence to establish a *prima facie* case for the plaintiff. The jury should have been instructed to find a verdict in favor of the appellant, and for that reason there should be no new trial.

The judgment is reversed, and the cause remanded, with instructions to dismiss the action; appellant to recover costs of this appeal.

REAVIS, C. J., and HADLEY, FULLERTON, ANDERS, MOUNT and DUNBAR, JJ., concur.