[No. 3408.   Decided March 28, 1901.]

Washington National Building, Loan & Investment Association, *Appellant,* v. James C. Saunders,

*Defendant,* D. F. Tozier, *Respondent.*

DISMISSAL OF ACTION — RIGHT WHEN AFFIRMATIVE RELIEF DEMANDED IN ANSWER.

Under the code procedure, whether the action be of legal or equitable cognizance, the plaintiff has no right to dismiss his action, when a counterclaim has been set up and affirmative relief demanded by the defendant. (*Waite v. Wingate,* 4 Wash. 324, overruled as to this point.)

SAME — FORECLOSURE OF PLEDGE — TRIAL OF PARAMOUNT TITLE.

In an action to foreclose a pledge of shares of stock, the fact that defendant's answer sets up a claim of paramount title to the shares of stock in controversy, affords plaintiff no right to demand a dismissal of his action, on the ground of being privileged to elect not to try title in such action.

(*California Safe Deposit and Trust Co. v. Cheney Electric Light, etc., Co.,* 12 Wash. 138, limited to mortgage foreclosure suits).

APPEAL — HARMLESS ERROR — SUSTAINING DEMURRER TO PLEADING.

Error of the court, if any, in sustaining a demurrer to a reply, is cured by the subsequent admission of testimony in support of the allegations contained in the reply.

Appeal from Superior Court, Jefferson County.—Hon. James G. McClinton, Judge.   Affirmed.

*Strudwick & Peters,* for appellant.

*A. R. Colman,* for respondent.

The opinion of the court was delivered by

Reavis, C. J.—Plaintiff is a domestic building and loan association, with its principal place of business at Seattle.   In June, 1898, defendant Saunders requested a loan of plaintiff, and offered as security a certificate of ten

shares of plaintiff's stock. On this security plaintiff loaned Saunders $800, taking his note for re-payment of the money in three months, with interest at ten per cent. per annum, and received in pledge the certificate of stock. The shares of stock were the property of defendant and respondent, Tozier, and, at the time of the delivery to plaintiff by Saunders, apparently bore the signature of the defendant Tozier to a blank indorsement thereon, and Saunders informed plaintiff that Tozier had given him the certificate to use for the purposes of the loan and for Saunders' use. On default in payment of the note, plaintiff brought suit against Saunders and Tozier to foreclose the pledge of the shares of stock against Saunders, and against any interest which Tozier might have in it, and for personal judgment against Saunders. Saunders appeared by demurrer, and Tozier answered separately. The allegation of the complaint is that Tozier claimed some interest in and to the certificate of shares of stock, but plaintiff avers such claim is subsequent and subject to its claim. The answer of Tozier denies the pledge of the stock by Saunders, and denies that his interest in the stock is subsequent or subject to the claim of plaintiff, or that plaintiff has any claim or interest whatever in the stock. The answer also affirmatively sets out that Tozier was at all times since the issuance of the stock the owner thereof, and denies that he ever assigned, transferred, delivered, or pledged the stock to plaintiff or to any one else, or that he authorized any assignment, transfer, delivery, or pledge of the stock to plaintiff or any one else, and demands judgment against plaintiff for the possession of the stock; or, if possession cannot be had, judgment is demanded for the value thereof, averred to be $1,000. The affirmative allegations are also pleaded as a counter-claim to plaintiff's cause of action. When the answer of the de-

fendant Tozier was filed, plaintiff moved to dismiss the action as against defendant Tozier on two grounds: (1) that the action is equitable and may be dismissed at any time before decree at plaintiff's election; (2) that it appears in defendant's answer that he claims a paramount and adverse title to the pledgee in the subject matter of the controversy, and that the same cannot be litigated herein. The court overruled the motion to dismiss, and plaintiff filed its reply to the counter-claim of defendant Tozier, admitting that defendant was at one time the owner of the shares of stock, but denying every other allegation of the answer, and affirmatively alleging that prior to the 30th of June, 1898, defendant Saunders was president of a state banking corporation and heavily interested as a stockholder; that the bank was then in charge of a receiver and in course of liquidation; that Saunders was desirous to have the receiver discharged, and reopen the bank and establish its credit, and applied to defendant Tozier to assist him with moneys and securities to place among the assets of the bank, to exhibit to the court who appointed the receiver so as to secure the discharge of the receivership; that defendant Tozier, desiring to assist Saunders in the reopening of the bank, delivered to him the certificate of stock, the subject of controversy herein, and certain other securities for the purpose of enabling the bank to reopen; that the court, upon the exhibition of the securities delivered to Saunders, was induced to discharge the receiver, and that the money received by Saunders from plaintiff was used as part of the apparent assets of the bank. A demurrer was filed to the affirmative matter in reply, and sustained, to which plaintiff excepted. The case then proceeded to trial. Testimony was produced by both plaintiff and defendant Tozier. The superior court found that the ten shares of stock were originally issued

by plaintiff to defendant Tozier, and ever since have stood, and are now standing upon the books of the plaintiff in the name of Tozier; that the representation made to plaintiff by Saunders of authority to pledge the same was false; that the purported indorsement of the stock was not the signature of Tozier, was not made by his consent, knowledge, or authority, and that the indorsement was in truth and fact a forgery; that Tozier did not know that such indorsement had been made until long after the stock was delivered to plaintiff; that plaintiff made the loan to defendant Saunders in good faith, and believed the indorsement thereof to be genuine; that Tozier was, at all times mentioned in the complaint, the owner and entitled to the possession of the shares of stock; that Tozier, in delivering possession of the stock to Saunders, did so without the intention of enabling or assisting Saunders to perpetrate any fraud on the court; and judgment was entered upon the findings against plaintiff in favor of respondent, Tozier.

1.    Appellant urges here error in refusing plaintiff's motion to dismiss the cause at its cost, based upon the ground that it was an equitable action and could be dismissed at plaintiff's election.    The rule urged is that plaintiff in an equitable action may, at any time before judgment, dismiss the cause; that the cross bill depends upon the original bill, and that, until final judgment, the right to dismiss the action remains with the plaintiff. Two decisions of this court are cited to maintain this rule; the first case is *Somerville v. Johnson,* 3 Wash. 140 (28 Pac. 373), which was a suit to quiet title.    The defendants entered a denial to the allegations of the complaint, but did not pray for affirmative relief.    It was observed by the court:

"We had no statutory provision regulating the right of

dismissal in equitable actions by the voluntary act of the party when this cause was tried, and therefore the right existed as at the common law, unless it was taken away by the above sections [our statute].  .  .  .  It cannot be supposed that such effect was intended, and we think that the right to dismiss an action like the present one is not affected by those sections, and that we must look to the common law for the rule in such cases, which allows the complainant at any time before final decree, upon payment of costs, to dismiss his bill."

It will be noted in the above decision that there was no affirmative defense or counterclaim in issue. The other authority from this court is *Waite v. Wingate,* 4 Wash. 324 (30 Pac. 81). This was also an action to quiet title. The answer contained denials of some of the material allegations of the complaint, and also affirmative defenses, which defendants denominated a counterclaim, and in which title was set up in themselves. The prayer of the answer was that defendants be adjudged the owners of the premises, and that plaintiffs had no interest therein. No reply was filed to the affirmative matters set out in the answer. At this point, and upon request of plaintiffs, the action was dismissed, against the contention of defendant. The court observed, in disposing of the case:

"As to the error alleged, which is grounded upon the court's allowing the plaintiffs to dismiss their action, we have decided in the case of *Somerville v. Johnson,* 3 Wash. 140, that § 409 of the Code of Procedure (which was § 286 of the Code of 1881), relating to non-suits, does not apply to equitable actions, and that, as we have no statutory provisions regulating the right of dismissal in equitable actions by the voluntary act of the party, the right exists as at the common law, which allows the complainant at any time before final decree, upon the payment of costs, to dismiss his bill. It is a rule of the common law that the original bill and the cross bill, where one is filed as a defense thereto, constitute but one suit,

even though affirmative relief be asked in the cross bill; that the whole constitutes but one cause, and a dismissal of the original bill carries the cross bill with it.     See *Elderkin v. Fitch,* 2 Ind. 90; *McGuire v. Circuit Judge,* 69 Mich. 593 (37 N. W. 568)."

It may be observed that, of the authorities cited in the opinion, *Elderkin v. Fitch* seems to support the announcement.     The Indiana court observed:

"So, we think, in the practice in chancery under our statute, R. S. p. 848, where the answer to the original bill is used as a cross-bill also, in cases requiring such a bill, the two together make but one suit; and hence the dismissal of the original bill must carry with it, out of court, the appendage."

The facts as stated in that case show that it was a bill in chancery for the foreclosure of a mortgage, and one of the defendants, in his answer to the original bill, filed a cross-bill against his co-defendants and the plaintiff in the original bill, and the plaintiff was then allowed to dismiss his original bill.     The court observes generally:

"A plaintiff in chancery has a right to dismiss his bill at his pleasure, before final hearing, upon payment of costs, if he is not in contempt."

The other case mentioned, *McGuire v. Circuit Judge,* was also an action to quiet title where the plaintiff in possession of real estate brought the action, and it was adjudged that a cross-bill would not lie on the part of the defendant for the purpose of obtaining possession, which was the proper object of an action of ejectment. The court observed:

"Where relief is sought by cross-bill, the relief prayed for must be equitable relief.   .   .   .   In our practice a cross-bill is considered as a mere dependence upon the original bill, and, when the matter set up is simply a matter of defense, it is disposed of by a dismissal of the original bill."

Evidently, under the Michigan rule, a legal counter-claim could not be interposed in an equitable action. It seems from an examination of the authorities that some expressions indicate there was a period in the course of equity jurisprudence when the defendant could make only a defensive answer to the original bill. There was to only a limited degree any set-off, and this seems to have been confined to matters set forth in the original bill. There was, of course, no recognition of a counterclaim, and the rule was then stated that the complainant could dismiss the original bill at any time before decree, and that such dismissal carried with it the answer or cross-bill. But it does not seem, when the cross-bill was authorized to set up matters for affirmative relief, that the right of dismissal at pleasure, even before decree, absolutely existed. Story, Equity Pleading (9th ed.), § 399, states the distinction as follows:

"A distinction should be drawn between cross-bills which seek affirmative relief * * * and cross-bills which are filed simply as a means of defense, since there are rules applicable to one class which do not apply to the other. Thus a dismissal of the original bill carries the cross-bill with it when the latter seeks relief by way of defense; but it is otherwise, and relief may still be given upon the cross-bill, where affirmative relief is sought thereby."

2 Barbour's Chancery Practice, 128, declares:

"The connection of the matter of a cross-bill, be it *per se* legal or equitable, with the subject matter of the original bill, gives the court jurisdiction of the cross-bill, of which it cannot be ousted by a dismission of the original bill."

It is well to examine the rule in the federal courts, as the distinction in the forms of action and procedure between law and equity is more carefully observed there than in

most of the state courts. *Holgate v. Eaton,* 116 U. S. 33 (6 Sup. Ct. 224), was a cause the supreme court reversed with directions to dismiss the original bill and proceed to final decree on the cross bill. In *Chicago & A. R. R. Co. v. Union Rolling Mill Co.,* 109 U. S. 702 (3 Sup. Ct. 594), there is an elaborate consideration of the rule, and the court observed:

"The appellants contend that Dumont, the original complainant, had the right at any stage of the case to dismiss his bill, and that its dismissal would carry with it the cross-bill, and that having made the motion to dismiss, which was erroneously overruled, all the subsequent proceedings and decrees are erroneous. It may be conceded that when the original bill is dismissed before final hearing, a cross-bill filed by a defendant falls with it. It may also be conceded that, as a general rule, a complainant in an original bill has the right at any time, upon payment of costs, to dismiss his bill. But this latter rule is subject to a distinct and well settled exception, *    *    *"

Again, in *Pullman's Car Co. v. Central Transportation Co.,* 171 U. S. 138 (18 Sup. Ct. 808), it was observed:

"The Pullman Company, complainant in the original suit, insists that it had the right to discontinue that suit at its own costs before any decree was obtained therein, and the refusal of the court below to grant an order of discontinuance upon its application is the first ground of objection to the decree herein. The general proposition is true that a complainant in an equity suit may dismiss his bill at any time before the hearing, but to this general proposition there are some well recognized exceptions. Leave to dismiss a bill is not granted where, beyond the incidental annoyance of a second litigation upon the subject-matter, such action would be manifestly prejudicial to the defendant. The subject is treated of in *Detroit v. Detroit City Railway Company,* in an opinion by the circuit judge, and reported in 55 Fed. Rep. 569, where many of the authorities are collected, and the rule is stated substantially as above. The rule is also referred to

in *Chicago & Alton Railroad v. Union Rolling Mill Co.,*
109 U. S. 702."

In the 55th Federal, *supra,* the circuit court observed:

"The motion to dismiss presents a question of equity
practice which is not as clearly settled as could be desired.
It seems hardly fair that after a case has been got ready
for hearing and the defendant has gone to the expense of
a full preparation, the complainant may deprive the de-
fendant of all that preparation by a dismissal, under which
he reserves full power to harass him by bringing a new
bill when he shall choose to do so, on the simple condition
that he pay the costs, which are so notoriously inade-
quate to compensate defendant for his actual expendi-
tures."

See, also, *Markell v. Kasson,* 31 Fed. 104.

It may be observed that the dismissal of the original
bill after the cross bill is filed, claiming affirmative relief,
as viewed by the federal courts, seems to be subject to
judicial discretion.   But we think, under the code pro-
cedure existing here, there is no absolute right of dismis-
sal after issue joined, where a counterclaim is set out and
affirmative relief demanded by the defendant.   There is
but one form of action in our procedure.   Bal. Code,
§ 4793.   The forms of pleading existing in civil actions
inconsistent with the code are abolished.   § 4903.   Section
4913a provides:

"The defendant may set forth by answer as many de-
fenses and counterclaims as he may have, whether they
be such as have heretofore been denominated legal or
equitable, or both."

In those states where the code procedure prevails, the
trial of the action, whether commenced in equity or at
law, and whether the counterclaim be legal or equitable,
seems to be uniform, and there is no distinction between
the principles controlling the dismissal of the action,

whether it be denominated legal or equitable. *Mott v. Mott,* 82 Cal. 413 (22 Pac. 1140) ; *Warner v. Darrow,* 91 Cal. 309 (27 Pac. 737) ; *Maffett v. Thompson,* 32 Ore. 546 (52 Pac. 565).

The last case contains a well-considered review of the authorities. It is concluded that the rule announced in *Waite v. Wingate, supra,* is not in consonance with the spirit of the code nor in accord with the better authorities. There was no legal error in the court's refusal to dismiss the action.

2. It is further urged by counsel for appellant that the answer sets up the claim of paramount title to the certificate of stock in controversy, and that such title cannot be litigated in this action. In support of this contention, *California Safe Deposit & Trust Co. v. Cheney Electric Light, etc., Co.,* 12 Wash. 138 (40 Pac. 732), is cited. That was an action to foreclose a mortgage, and the defendant set up a paramount and adverse title to the property the subject of the mortgage. It was determined that such claim could not be litigated in a foreclosure suit. The subject of the controversy here is a pledge—a certificate of stock—in the possession of the plaintiff. In the case of a mortgage the possession is usually in the mortgagor. A pledge as this is not attended with all the incidents and is not in fact a mortgage, such as is created by our statute. The pledgee may, according to the best authorities, by proper notice to the pledgor, sell the pledge for the satisfaction of any lien he has upon it. He may, however, proceed to a judicial foreclosure and submit the pledge for the adjustment of all conflicting claims. In the case of *Pullman's Car Co. v. Central Transportation Co.,* 171 U. S. 138 (18 Sup. Ct. 808), the court observed, with reference to the dismissal of a bill in equity because the cross complaint claimed a return of personal property in

the possession of the complainant among other demands for relief:

"Whatever may be the original character of the liability of the Pullman Company to return or make compensation for the property, we are of opinion that under the facts above set forth it cannot object to the filing of the cross-bill, or to the determination of the amount of its liability by a court of equity. It had itself voluntarily appealed to the jurisdiction of such a court for the purpose of obtaining its aid in decreeing the terms upon which its obligations to the Central Company might be fulfilled and the lease terminated, either under the eighth clause in the lease or because of its invalidity as being *ultra vires*. Having thus appealed to equity for its aid and the lease having been conclusively determined to have been void, we think it was within the fair discretion of the court to retain jurisdiction of the cause and of the original complainant, and to permit the filing of a cross-bill in which the cross-complainant might seek affirmative relief, *   *   *."

In this case the plaintiff in possession of the certificate of stock voluntarily brought it and the defendant into court. The defendant denied the superiority of any claim plaintiff had to the certificate, and affirmatively claimed that he was entitled to it. It would seem inconsistent with our liberal practice to dismiss the action, and then allow the same relief upon the commencement of another action in different form. It is not assumed that there is any lack of jurisdiction in the court to determine the controversy in its present form, but the objection is solely upon the ground that the plaintiff may elect not to try it. We do not desire to extend the rule announced in *California Safe Deposit & Trust Co. v. Cheney Electric Light, etc., Co., supra,* to the foreclosure of pledges such as this.

The exception to the demurrer to the reply, even if well taken, did not injure plaintiff, in view of the testimony

subsequently admitted at the trial. Also, see *Thorp v. Smith,* 18 Wash. 277 (51 Pac. 381).

We have examined the testimony, and find some substantial conflict, but are not inclined to disturb the findings of the superior court.

The judgment is affirmed.

DUNBAR, FULLERTON, ANDERS and WHITE, JJ., concur.