[No. 23545.  Department One.  March 22, 1932.]

THE NATIONAL CITY BANK OF SEATTLE, *Respondent*, v.
INTERNATIONAL TRADING COMPANY OF AMERICA,
INC., *et al., Appellants.*[1]

*Fred'k R. Burch,* for appellants.
*Almon Ray Smith,* for respondent.

TOLMAN, C. J.—In this action, by a complaint veri-
fied October 5, 1920, but not filed until May 23, 1922,
the plaintiff sought recovery upon a promissory note
for the principal sum of five hundred dollars, together

[1]Reported in 9 P. (2d) 81.

with interest, attorneys' fees and costs. By answer filed July 21, 1923, the defendants, through failure to deny, admitted the essential allegations of the complaint, and affirmatively pleaded a counterclaim. They prayed for judgment in their favor on the counterclaim in the sum of $10,672.26, with interest from July 22, 1920, less any amount which might be due on the promissory note described in the complaint.

The transcript of the record discloses no other move in the case until March 28, 1931, when the plaintiff filed a motion to dismiss the complaint and the counterclaim set up in the affirmative answer for want of diligence in prosecuting both the original cause of action and the counterclaim. This motion was supported by an affidavit showing that the summons and complaint were served on the defendants in October, 1920; that a demurrer had been interposed which was never brought on for hearing; that the original attorneys for the defendants had withdrawn and others had been substituted; that an answer and counterclaim had been filed, as already mentioned; that a reply thereto, denying all material allegations, had been promptly served (but not filed); and that the issues had been fully made up and the cause was ready for trial on August 7, 1923, and at all times thereafter, but that no further action had been taken by anyone in the cause; that the corporate defendant had at all times mentioned been insolvent, and that the individual defendants, who were alleged to be closely associated with the corporate defendant, had made no demand for payment of the sums sought to be recovered by the counterclaim, and that the counterclaim had been abandoned.

This motion to dismiss was brought on for hearing on April 6, 1931, resulting in an order entered April 10, 1931, which, in effect, passed the motion without

prejudice to the judge to whom the case might be assigned for trial.

An amended reply to the affirmative answer and cross-complaint was thereafter filed. The defendants filed a reply thereto. A stipulation was entered into between the parties for the taking of certain depositions, and it was further stipulated that certain documentary evidence might be introduced at the trial.

The cause came regularly on for trial on November 9, 1931, and the motion to dismiss was promptly renewed and argued to the court. The trial court tentatively denied the motion, impaneled a jury to try the case and then heard the parties on the motion at length, and considered the affidavits presented pro and con; whereupon the motion was granted, and the complaint and the cross-complaint were both dismissed without costs to either party. From this order of dismissal, the defendants have appealed.

In addition to the record as already outlined, it is necessary to consider, as briefly as we may, the facts presented to the trial court by the affidavits on behalf of each of the parties which are brought here by statement of facts.

The affidavits, considered as a whole, rather satisfactorily show that the matters set up in the counterclaim grew out of transactions in which were involved, in addition to the parties here, the Seattle National Bank and a well-known wholesale house in Chicago; and if either of these could be held liable for the loss, the cause for differences between the parties to this action would immediately cease.

It appears that the plaintiff here, when the situation culminated, promptly brought suit against the Seattle National Bank, in which suit the appellants co-operated and assisted, seeking to throw the loss upon that

bank. That action came to this court (*National City Bank v. Seattle National Bank,* 121 Wash. 476, 209 Pac. 705, 30 A. L. R. 347), and was decided against the interests of both parties to this action. After such adverse judgment, the International Trading Company began an action in the Federal court at Chicago against the wholesale house involved, and that case went to the circuit court of appeals and was there finally decided, against the interests of both parties here, in 1928.

It is asserted that the Chicago litigation was entered into and prosecuted throughout with the consent, approval and advice of the respondent bank. The delay on the part of the appellants since the termination of the Chicago litigation is asserted to have been caused by the financial condition of the International Trading Company, which was largely occasioned by the expensive and unsuccessful litigation just mentioned. That and its original loss of the amount involved in the counterclaim are presented as the reasons for its inability to finance the prosecution of its demands against the respondent bank.

Stress is laid upon the activities of the appellants since the motion to dismiss was first served upon them, and, as witnessed by the stipulation already referred to, they seem to have been diligent in preparing for trial since put in motion by the attempt to dismiss the action.

Viewing the record as a whole, it would seem that, if there is fault here, the parties must be held to be equally at fault; and it is apparently the general rule that, where parties are equally at fault, neither can successfully assert laches against the other. *Kimberly-Clark Co. v. Patten Paper Co.,* 153 Wis. 69, 140 N. W. 1066; *Welch v. McCoy,* 40 S. D. 273, 167 N.

W. 159; *Jacot v. Marks,* 26 Misc. Rep. 670, 57 N. Y. Supp. 904.

The facts in none of these cases are sufficiently similar to make them controlling here, and we think the broader principle laid down in 21 C. J. 221 more in point. It is there said:

"In some cases long lapse of time has been held sufficient of itself to prevent relief. But mere delay in asserting a right does not ipso facto bar its enforcement in equity, by the great weight of authority, unless the case is barred by the statute of limitations. To constitute a defense, the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, as through loss or obscuration of evidence of the transaction in issue, or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted, or, as commonly phrased, the delay must have worked injury, prejudice or disadvantage to defendant or others adversely interested, . . ."

It does not appear here that the delay is such as to preclude the court from arriving at the truth of the matters in controversy, that there has been any loss of evidence, or that there has been such a change of conditions as would render it inequitable to enforce the right asserted. In other words, so far as the record before us shows, no particular harm has resulted to either party by the delay, save only the delay itself; and the issues can now be tried out and the truth determined, and any judgment arrived at enforced without causing any particular hardship other than might have resulted if the case had been disposed of with no delay at all.

Much stress is laid by the appellants upon the recent statute (Laws of 1929, chap. 89, p. 172) govern-

ing dismissal and nonsuit in this state. That statute, so far as pertinent, reads:

"Section 1. An action in the superior court may be dismissed by the court and a judgment of nonsuit rendered in the following cases:

"(1) Upon the motion of the plaintiff, (a) when the case is to be or is being tried before a jury, at any time before the court announces its decision in favor of the defendant upon a challenge to the legal sufficiency of the evidence, or before the jury retire to consider their verdict, (b) when the action, whether for legal or equitable relief, is to be or is being tried before the court without a jury, at any time before the court has announced its decision: *Provided,* That no action shall be dismissed upon the motion of the plaintiff, if the defendant has interposed a set-off as a defense, or seeks affirmative relief growing out of the same transaction, or sets up a counter claim, either legal or equitable, to the specific property or thing which is the subject matter of the action. . . .

"(3) When the plaintiff fails to appear at the time of trial and the defendant appears and asks for a dismissal. . . .

"(8) Upon the motion of the defendant, when, upon the trial, the plaintiff fails to prove some material fact or facts necessary to sustain his action, as alleged in his complaint."

It is argued that if, by reason of the cross-complaint being considered the principal cause of action, the situation of the parties is thereby reversed, and the defendants in this case became the plaintiffs so far as the cross-complaint is concerned, then the defendants could not be put in default unless they failed to appear at the time of trial, and only then could the action be dismissed as to them. It is true that the statute does not, in terms, recognize the inherent power of the court to dismiss an action whenever, in the interests of justice, he may deem that the proper course to pursue; yet we think that inherent power remains,

and we see nothing in the statute which forbids its exercise.

Perhaps it is not necessary here to determine whether there be an inherent power in the courts beyond that mentioned in the statute; and in view of the conclusion we have reached in this case, we will leave that question to be considered when it is necessarily involved.

■ As already indicated, the respondent seeks to minimize the force of the authorities cited by the argument that, since its claim was small and its principal debtor was insolvent, and since the counterclaim was large, the defendants, by reason of the cross-complaint, became in effect the plaintiffs, and the burden was upon them to diligently prosecute, citing the case of *Northwestern & Pacific Hypotheek Bank v. Ridpath,* 29 Wash. 687, 70 Pac. 139. Assuming that the defendants did become, in effect, the plaintiffs, and charged with the duty to diligently prosecute their cross-complaint, yet still we doubt the justice or advisability of dismissing the action after a jury was impaneled, when all parties were ready to proceed to trial on the merits. Had the lower court, when the motion was first presented, before the preparations had been made for trial, granted it, we would have felt that he was acting within his discretion, and would not have interfered. *Langford v. Murphy,* 30 Wash. 499, 70 Pac. 1112; *First National Bank of Fond du Lac v. Hunt,* 40 Wash. 190, 82 Pac. 285.

These cases would have been ample authority sustaining the trial court, had he dismissed the action when the motion was first presented and on the record as it then appeared; but they are not authority for the dismissal of the action after the jury was impaneled, when both parties were present, ready to proceed with the trial, and upon the showing then

made, which we have already outlined, tending to excuse delay.

We do not consider that the case of *Congdon v. Aumiller*, 79 Wash. 616, 140 Pac. 912, is sufficiently parallel on the facts to be an authority either way.

As indicated, when a case is actually called for trial, a jury is empaneled and all parties are ready to proceed, the question of delays and lack of diligence which preceded that time becomes largely unimportant, and unless some party has been placed in a position of disadvantage thereby, we can not think that it is a sound exercise of discretion to then dismiss the action.

Something was said in oral argument on behalf of the respondent as to the judgment of dismissal being sustainable as a judgment on the pleadings, by reason of certain matters pleaded in the reply as *res judicata*. The trial court did not pass on this question. We think it was there raised prematurely, and we do not pass upon it. That matter may be urged at the proper point in a trial on the merits.

The judgment is reversed, with directions to proceed with the trial on the merits.

PARKER, MITCHELL, BEELER, and HERMAN, JJ., concur.