[No. 35713.   Department One.   October 13, 1961.]

ED BISHOP, *Respondent*, v. ROBERT HAMLET *et al.*, *Appellants.**

*Jack Steinberg,* for appellants.

*Bennett Hoffman,* for respondent.

FINLEY, C. J.—This case comes to us on an agreed statement of facts. It is conclusively established that on March 10, 1959, respondent obtained a judgment for $230.92 against appellant in a justice of the peace court in King County. Appellant appealed to the superior court on March 27, 1959. Nothing further was done until May 19, 1960, when appellant moved in the superior court for a dismissal of

*Reported in 365 P. (2d) 600.

the action for want of prosecution under Rule of Pleading, Practice and Procedure 41.04W, RCW Vol. 0. Sometime later, respondent moved that the superior court dismiss the appeal from the justice court. Appellant's motion to dismiss the action was denied; respondent's motion to dismiss the appeal was granted. Appellant assigns error to both rulings of the superior court.

The first question raised by appellant's assignments of error is the effect of Rule of Pleading, Practice and Procedure 41.04W upon appeals from justice of the peace courts to the superior courts. The pertinent portion of the rule reads as follows:

"(a) Dismissal on Motion of Parties. Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross-claimant, or third-party plaintiff neglects to note the action for trial or hearing within one year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after notice to the adverse party."

Appellant argues that the rule is clear and mandatory; that respondent was the plaintiff in the justice court and retained that status in the superior court; and that, because respondent did not note the action for trial within one year after appellant took it to the superior court, the action should have been dismissed. There is some support for this line of argument in cases from other states. *Yost v. Gadd* (1939), 227 Iowa 621, 288 N. W. 667; *Western Union Telegraph Co. v. McKee Bros.* (Tex. Civ. App., 1911), 135 S. W. 658. However, we cannot agree with appellant's argument or with the conclusions of the cases above cited. Rule 41.04W, *supra,* is clearly designed to avoid procrastination by the moving party; *i.e.,* the party responsible for the presence of the case or the claim on the records of the superior court. In *Friese v. Adams* (1954), 44 Wn. (2d) 305, 267 P. (2d) 107, we observed that the requirement of the rule is that the *moving party* must note the action for trial or hearing in order to avoid a dismissal. We also have stated, in a case involving an original action in the

superior court, that the plaintiff is the *"attacking party and must by prompt action comply with the rule under consideration."* (Italics ours.) *State ex rel. Pacific Fruit & Produce Co. v. Superior Court* (1945), 22 Wn. (2d) 327, 155 P. (2d) 1005.

We have said on occasion, as appellant points out, that the obligation of going forward to avoid the operation of the rule always belongs to the plaintiff or cross-complainant (with the recent amendment of the rule, we could add other initiating parties) and not to the defendant. *State ex rel. Washington Water Power Co. v. Superior Court* (1952), 41 Wn. (2d) 484, 250 P. (2d) 536, and cases cited therein. The correctness of the statement, where the rule applies, cannot be disputed. We do not think the rule applies to appeals from justice of the peace courts to the superior courts.

■ The moving party, or the attacking party, in an appeal is, of course, the appellant, regardless of his status as plaintiff or defendant in the justice court. The rule is designed to prod the moving party or make him suffer the consequences of his own delay. It would be unreasonable to require the victorious justice court plaintiff who is content with his judgment and who does not desire further relief once again to take the initiative because his less-satisfied adversary has taken the case into the superior court. Rule 41.04W, *supra,* we are convinced, does not and should not apply to appeals from justice of the peace courts.

(Perhaps it should be pointed out that

" . . . The issue before the justice shall be tried in the superior court without other or new pleadings, unless otherwise directed by the court." RCW 12.36.050.

This makes inapposite the reasoning of *Black v. H. Feinberg Furniture Co.* (1938), 39 Del. 523, 3 A. (2d) 62, which held that the burden of a statute similar to Rule 41.04W (*supra*) was on whoever was the plaintiff in the justice court, because new pleadings would have to be filed and, if the plaintiff did nothing, there would be no way for the appellant-defendant to get the ball rolling.)

The trial court did not err in denying appellant's motion for dismissal of the case for want of prosecution.

■   Appellant's second assignment of error—that the trial court should not have granted respondent's motion to dismiss the appeal—likewise is without merit. The power to dismiss cases for want of diligent prosecution is inherent in the courts; no express authorization is necessary. See *Seely v. Gilbert* (1943), 16 Wn. (2d) 611, 134 P. (2d) 710; 17 Am. Jur., Dismissal, Discontinuance, and Nonsuit, § 77[1]; and 27 C. J. S., Dismissal and Nonsuit, § 65 (1) b.[2]  Appellant offers no arguments, other than those directed to Rule 41.04W, *supra,* as to why the dismissal was erroneous or an abuse of discretion. No such reasons are apparent from the agreed statement of facts.

The judgments of the trial court are in all respects affirmed.

HILL, WEAVER, and ROSELLINI, JJ., concur.

FINLEY, C. J. (concurring specially in the result)—The majority agree that it is unnecessary and would serve no good purpose to discuss the amount claimed to be in controversy in connection with our constitutional limitation on appellate jurisdiction. Consequently, the majority opinion makes no mention of jurisdiction and the amount allegedly in controversy.

---

[1]".   .   . By the great weight of authority the power of the courts to dismiss a case because of a failure to prosecute with due diligence is said to be inherent and independent of any statute or rule of court. .   .   ."

[2]"Although there is authority to the contrary, the power of a court to dismiss a suit or to grant a nonsuit for want of prosecution is generally recognized by the decisions of the courts to be inherent and to exist independently of statute or to exist independently of rule of court. While statutes or rules of court providing for the dismissal of actions for want of prosecution have been adopted in a number of jurisdictions, such statutes or rules must be read in the light of the existence of such inherent power, which remains unimpaired unless it is limited expressly or by necessary implication. Thus, it has been held that the affirmative expression of a statute providing for dismissal does not deprive the court of its inherent powers.   .   .   ."

Judge Foster disagrees with the majority. He construes the amount in controversy to be insufficient to justify appellate jurisdiction. On the basis of the latter reasoning he, in effect, concurs in the result reached in the majority opinion.

Since amount in controversy equated with jurisdiction is emphasized as the only appropriate ground for affirmance, I believe the following comment is pertinent.

The statement emphasized by Judge Foster as being dispositive of this appeal ("for appellate purposes, the original amount in controversy is determined by the averments of the pleadings, not by the prayer") appears in a number of decisions of our court. However, it honors, stresses, and even insists upon technicality in pleading. Such a way of thinking is, quite hopefully, on the wane, outmoded by the modern conception that truth and justice must be the objective and the quest of the law rather than emphasis upon sheer form simply for form's sake. The statement heretofore quoted in parenthesis unquestionably has a long history in our state.

The starting place is *Doty v. Krutz* (1895), 13 Wash. 169, 43 Pac. 17, which was an action for damages caused the plaintiffs when the defendant removed from the state certain wheat upon which they had liens totaling less than $200. Damages of $250 were alleged, and judgment in that amount was prayed for. This court held that it lacked jurisdiction:

". . . It is evident from the complaint that the amount originally in controversy was less than $200, but appellant insists that the amount alleged in the *ad damnum* clause in the complaint, and for which judgment was prayed, was the amount involved, so far as the constitutional inhibition on appeals where the amount is less than $200 is concerned. We do not think the constitution can be so construed. If so, any claim for a judgment, which could not possibly be obtained under the pleadings, would permit an appeal and destroy the object of the constitutional enactment."

The next case which should be considered in the progression is *Ingham v. Harper & Son* (1912), 71 Wash. 286, 128 Pac. 675. The action was brought to recover debts in

the sum of $192.75, plus interest. The court held that interest on the debt is properly to be included as a part of the original amount in controversy, but only that amount which accrued to the time the action was commenced. The court actually did the necessary arithmetic, but concluded that the principal sum, plus interest to the time the action was commenced, amounted to $199.66. The prayer had been for $205.52. The appeal was dismissed. The court stated:

"It is well established that the amount in controversy as limiting the right of appeal is determined by the averments of the pleadings, not by the demand for judgment."

Five cases were cited in support of the controlling rule. They are, with my descriptions, as follows:

1. *Doty v. Krutz, supra.*

2. *Incorporated Town of Central City v. Treat* (1897), 101 Iowa 109, 70 N. W. 110. A tax of $168 had been assessed on an estate. Plaintiff town's share of the tax was $25. The board of tax supervisors authorized a rebate because the assessment had been erroneous. The town asked that the entire rebate be set aside. It was held that, although the total amount of the rebate was in excess of the appellate jurisdictional requirement, the town's interest was too small to give jurisdiction. On the averments, in which the town did not claim to represent the other tax beneficiaries, only $25 was involved, the demand for judgment notwithstanding.

3. *Seward v. Steeley* (1902), 29 Ind. App. 689, 65 N. E. 216. Neither the amount alleged to be due nor the sum prayed for was enough for appellate jurisdiction, and the case is not strictly in point. However, the opinion discusses two earlier cases in which it was held that the bill of particulars controlled over the prayer.

4. *Williamson v. Brandenberg* (1892), 133 Ind. 594, 32 N. E. 834. After a horse trade, the plaintiff claimed damages because the horse he received was not as represented, and was sick. There was an allegation of loss of income the horse would have earned had it been as was represented. It was held that the claimant had kept the horse too long to rescind. The only damages he could possibly get would

be the difference between the real value of the horse and the value as represented, plus the cost of care until the misrepresentation was discovered; this amount, under the averments, could not possibly reach the jurisdictional requirement. It was said that "the averments of facts and amount of damages averred in the pleading, and not the prayer, must govern as to the question of jurisdiction."

5. *Schacker v. Hartford Fire Ins. Co.* (1876), 93 U. S. (3 Otto) 241, 23 L. Ed. 862. Although damages were laid at $3,000, it was apparent from the record that in no event could recovery exceed $1,400. The appellate jurisdictional requirement was $2,000. Held: " 'the matter in dispute is the debt claimed, and its amount, as stated in the body of the declaration, and not merely the damages alleged or the prayer for judgment at its conclusion . . .' "

I think it is too clear for argument that what courts mean when they say that they will look at the averments rather than at the demand for judgment is that they will look at what has happened between the parties, according to the allegations of the complaint, and make a preliminary calculation of the sums that may be included as part of the "original amount in controversy." If, under the pleadings, the claimant may be entitled to a large enough recovery to provide appellate jurisdiction, the appeal may be heard.

Clearly, none of the cases relied upon in *Ingham v. Harper & Son, supra,* turned upon the technicality of pleading certain items in one part of the complaint rather than another. Nor have recent cases in this state, in my judgment, been so concerned with formality that truth, justice, and reasoned experience have been ignored.

In *Jaklewicz v. Lenhart* (1915), 86 Wash. 138, 149 Pac. 642, the plaintiff sued for $100, and the defendant cross-claimed for $400. The cross claim was clearly improper as against the plaintiff. The defendant's appeal from a judgment for the plaintiff was dismissed. This court said that the amount in controversy is determined by the allegations of the pleading, not by the prayer, and that there was no

amount in controversy between the plaintiff and defendant exceeding $200.

*Sherman v. Babcock* (1916), 92 Wash. 546, 159 Pac. 781, involved an action on a contract to supply a tombstone for $190. The complaint alleged that the plaintiff had performed and had not been paid. The prayer was for $190, plus six per cent interest from May 1, 1911. It was held that, although it is proper to include within the amount in controversy the interest accumulated to the time the action was commenced, the complaint did not show when the plaintiff performed. Therefore, it was said, there was no way for the court to know when the debt became due and the interest started running. If the plaintiff's performance had been rendered and the defendant's obligation to pay had arisen only shortly before the commencement of the action, the interest would not have been enough for the total amount to exceed $200.

In *Loveland v. Riley* (1927), 142 Wash. 44, 252 Pac. 154, the plaintiff sued to recover on six promissory notes representing a total principal debt of $195. The only mention of interest was in the prayer for judgment which requested "a total judgment of $195 together with $60 reasonable attorneys' fees and costs rendered herein and interest on each note at the rate of 6% per annum from date." Neither costs nor attorney's fees constitute a part of the original amount in controversy. The significance of the *Loveland* case, for present purposes, is how the court disposed of the interest issue. It was stated that,

"... There being no claim for interest in the complaint, other than the prayer for judgment, in order to determine whether there was a sufficient allegation of the jurisdictional amount for appeal, it would be necessary for the court to take the due date of each note and figure the interest thereon until the action was begun and add these sums to the aggregate amount of the promissory notes."

After quoting from *Udall v. Steamship Ohio* (1854), 58 U. S. (17 Howard) 17, 15 L. Ed. 42, in which the complaint did not make any claim for interest, and it was held that it

could not be amended in the appellate court to reach the jurisdictional amount, the *Loveland* opinion continued:

"The aggregate amount of the promissory notes in question here was one hundred ninety-five dollars. There being no claim for interest made in the complaint, other than in the prayer, and the claim for attorney's fees not aiding the jurisdictional amount, it follows that under the authorities above referred to the original amount in controversy was less than two hundred dollars.

"In the case of *Sherman v. Babcock,* 92 Wash. 546, 159 Pac. 781 [discussed *supra*], there was no showing when the amount claimed became liquidated and payable, and it was held that the amount involved determining the jurisdiction on appeal must affirmatively appear in the complaint, and the court will not presume jurisdiction. The question whether it was necessary to allege or claim interest in the complaint, when that amount was necessary to establish the appellate jurisdiction, was not involved in that case."

In passing, mention should be made of a point of similarity in the *Sherman* and *Loveland* cases: they clearly demonstrate the severity with which pleadings were treated thirty or forty years ago. In *Sherman,* the court refused to assume that the May 1, 1911, date, from which interest was demanded, was the date performance was completed rather than, perhaps, the date on which the plaintiff's performance had been due under the contract. In *Loveland,* the court declined to perform the simple arithmetical calculation necessary to determine how much interest had accrued at the time the action was commenced (although in the *Ingham* case, *supra,* the court figured the amount of interest owing when that action was brought—to the distress of the appellant). Recently, in our state we have embraced and adopted certain new and liberal concepts of pleading. There is no problem of computation or lack of clarity in the instant case, because the plaintiff specifically stated the amount of interest to which he considers himself entitled. Furthermore, in the record on appeal, the agreed statement of facts admits that the justice court judgment was in the sum of $230.92.

The *Jaklewicz, Sherman,* and *Loveland* cases, *supra,* all state that the amount in controversy is to be determined by the averments of the pleadings and not by the demand for judgment. Joining them in similar statements are *Wockner v. Spingelt* (1954), 44 Wn. (2d) 824, 271 P. (2d) 438, 58 A. L. R. (2d) 162; *Baker v. Oliver* (1951), 37 Wn. (2d) 862, 226 P. (2d) 567; *Bradley v. Fowler* (1948), 30 Wn. (2d) 609, 192 P. (2d) 969, 2 A. L. R. (2d) 822; and *Donahue v. Hardman Estate* (1916), 91 Wash. 125, 157 Pac. 478. In none of these cases has this court committed itself to the rule that a claim for interest in the *prayer* of a complaint can under no circumstances be considered as a part of the amount in controversy; but, if, by good fortune or design, it is stated antecedent to the prayer for judgment that the defendant owes a sum of interest (computed at a legal rate), this court would thereupon be vested with appellate jurisdiction.

Finally, I trust that the foregoing specially concurring views will adequately meet any need indicated for further elaboration of the majority opinion.

FOSTER, J. (dissenting)—I dissent from the decision affirming the judgment. The court does not have jurisdiction of this appeal, so it must be dismissed. In such circumstances, the court is powerless to affirm the judgment. *Johnston v. Seattle Taxicab & Transfer Co.,* 89 Wash. 494, 154 Pac. 787.

The appellate jurisdiction of this court is derived solely from Art. IV, § 4, of the state constitution, which, so far as material, is:

" . . . excepting that *its* appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars . . ."[3]

The modern function of pleading has no place in determining what the phrase "original amount in controversy" meant to the members of the constitutional convention

---

[3] Only one other state constitution, Arizona, has the same language. *Arizona Eastern R. Co. v. Hinton,* 20 Ariz. 266, 179 Pac. 963.

seventy-two years ago. The meaning has not changed with the passage of time. It is the same now as then.

Three members of the constitutional convention of 1889, Judge John P. Hoyt, president of the convention,[4] Judge Theodore L. Stiles and Judge Ralph Oregon Dunbar, became judges of this court as soon as it was constituted. The decisions interpreting the constitution during the period when those three men constituted a majority of the court of five have a special significance.

*Bleecker v. Satsop R. Co.,* 3 Wash. 77, 27 Pac. 1073 (1891), decided that the amount originally sued for and not the amount of the judgment was the decisive factor on the jurisdictional issue. The court (per Dunbar, J.) explained the meaning of the phrase "original amount in controversy" as follows:

" . . . but the language of our constitution excludes the idea of the amount in controversy at the time the case reaches the supreme court. It says the 'original amount in controversy.' The word 'original' is a word of plain import and well-understood meaning, and will hardly bear construction in this connection. The 'original amount in controversy' can mean nothing more nor less than the amount originally in controversy, or, in other words, the amount sued for. . . ."

Six years after the adoption of the constitution, *Doty v. Krutz,* 13 Wash. 169, 43 Pac. 17, decided that the prayer for more than two hundred dollars did not give the court jurisdiction when the allegations of the complaint were for less than two hundred dollars. The court's language (per Dunbar, J.) is:

" . . . It is evident from the complaint that the amount originally in controversy was less than $200, but appellant insists that the amount alleged in the *ad damnum* clause in the complaint, and for which judgment was prayed, was the amount involved, so far as the constitutional inhibition on appeals where the amount is less than $200 is concerned. We do not think the constitution can be so construed. If so, any claim for a judgment, which could not possibly be

---

[4]Afterwards Professor of Law, University of Washington School of Law.

obtained under the pleadings, would permit an appeal and destroy the object of the constitutional enactment."

When *Fidelity & Deposit Co. of Maryland v. Faben,* 51 Wash. 308, 98 Pac. 764, was decided in 1909, Judge Dunbar was still on the court. The meaning of the "original amount in controversy" was explained:

" . . . We believe that the word 'original,' as used in the constitution and statute, was for a significant and definite purpose, that purpose being precisely what the ordinarily accepted meaning of the word would indicate. The word is defined as follows:  'Pertaining to the origin or beginning; preceding all others; first in order; primitive; pristine.'  . . ."

In an unbroken line of cases from the earliest history of the court, the language of the complaint, not the demand for judgment, determines the original amount in controversy. The cases were last reviewed in *Loveland v. Riley,* 142 Wash. 44, 252 Pac. 154 (1927). The conclusion from the decided cases was there stated to be:

"The aggregate amount of the promissory notes in question here was one hundred ninety-five dollars.  There being no claim for interest made in the complaint, other than in the prayer, and the claim for attorney's fees not aiding the jurisdictional amount, it follows that under the authorities above referred to the original amount in controversy was less than two hundred dollars."

The purpose of the constitutional provision is to make the jurisdiction of the superior court final as to small amounts, and to free the time of this court for the consideration of cases within its jurisdiction. *State ex rel. McIntyre v. Superior Court,* 21 Wash. 108, 57 Pac. 352; *State ex rel. Hamilton v. Superior Court,* 8 Wash. 271, 36 Pac. 27. This is especially true in 1961 when the delay in cases on the dockets of appellate courts is a matter of increasing public concern.[5]

The court does not have jurisdiction of this appeal. It cannot, therefore, affirm or reverse the judgment. The only

[5]The Battle of the Backlog in the Supreme Court, 33 Rocky Mt. L. Rev. 489 (June, 1961).

permissible order is to dismiss the appeal because the "original amount in controversy" is less than two hundred dollars. This the court should do of its own motion. *Green v. Nichols,* 40 Wn. (2d) 661, 245 P. (2d) 468.