[No. 219-40011-1.    Division One—Panel 2.    October 26, 1970.]

BERTHA HANSON, *Respondent*, v. WILLIAM JOSEPH LEE *et al.*,
*Appellants.*

*Karr, Tuttle, Campbell, Koch & Campbell* and *Coleman P. Hall,* for appellants.

*Clodfelter, Lindell & Carr* and *Richard F. Krutch,* for respondent.

HOROWITZ, A. C. J.—Plaintiff commenced an action to quiet title to one-half of the area between two houses owned by the plaintiff and defendants, respectively, located in Seattle. Defendants counterclaimed praying that title to the entire area lying between the houses be quieted in them. From a decree in favor of plaintiff, defendants appeal.

The evidence supports the following statement of the case. Plaintiff and her mother purchased their home at 2716 South Norman Street in Seattle in 1922, on a 32 foot lot. They moved in and continued to live in the property until the action below, nearly 45 years later. No survey of the property lines was made when the plaintiff purchased the property and there is no evidence that the plaintiff ever knew of the exact location of the platted boundary lines until a 1962 survey was made at the instance of the defendants. However, when plaintiff purchased her home, she was advised that the property line between her lot and the adjoining lot to the west, owned by the defendants' predecessor in interest, was the line equidistant between the two houses running the length of the properties. She had heard a rumor that all lot lines in the block were off but that the homes had been in existence on such lots for over 50 years and that the houses had not been moved. The rumor was ignored and she treated the westerly boundary of her lot as a boundary line equidistant between the two adjoining houses. Thereafter, the plaintiff and the then owners of the defendants' property treated and continued to treat the true boundary line between their respective lots as on a center line equally distant between their houses.

About 1937 plaintiff and the defendants' predecessor owner of the adjoining property built a double garage for joint use to the rear (north) of both houses, the respective

owners sharing the cost of the material involved. The center line of the garage was about 2 feet east of the center line between the houses. Sometime between 1937 and 1941, pursuant to agreement between the plaintiff and the defendants' predecessor owner, it was orally agreed that concrete strips be put in from the garage to the street on each side of the theretofore agreed upon center line, the concrete strips to be used for driveway purposes. Subsequent to the construction of the concrete strips until about 1962, the concrete strips were used by the respective owners for the agreed upon driveway purposes without incident or friction between plaintiff and defendants' predecessor, and later, by the defendants themselves. In fact, subsequent to 1947 the double garage was improved by the joint efforts of the plaintiff and the defendants, the latter paying for a portion of the material.

Defendants purchased their property adjoining that of the plaintiff in 1947. Defendants made no survey of the correct boundary lines. On the basis of information given them, possibly by seller's agent, they assumed that the property line between the two houses "was community and . . . what both had to share" and further assumed that the driveway was a common driveway for both owners. Defendants observed the garage was built 2 feet east of the center line. Sometime in 1958 or 1959 defendants suspected that the boundaries then used were off, but said nothing. Shortly after the death of the plaintiff's husband in 1962 some difficulties developed concerning the use of the double garage. Defendants then caused a survey to be made of the property lines. The survey showed that the center line, accepted for so many years as the agreed boundary line, did not conform to the platted boundary line; and that the garage was located entirely on defendants' property as surveyed, and the boundary extended 4 feet into the plaintiff's house. In 1965, while the action to quiet title was pending, the defendants tore down the double garage and constructed a new, single garage for their own use. The court below held defendants' action violated plaintiff's rights.

■ Defendants contend that certain findings and conclusions entered by the court below are erroneous. The court in substance found that the plaintiff and the defendants' predecessors had at all times since 1922 agreed that the common boundary line between the respective parties was on a center line equally distant between their houses; that the common boundary line was reaffirmed (between 1937 and 1941) when concrete strips were placed upon the property of the parties for driveway purposes; that the concrete driveway was thereafter used continuously for driveway purposes. In its conclusions of law the court stated that the plaintiff and her predecessors and the defendants' predecessors over 40 years ago established a common boundary equidistant between the houses; that the line was partially modified in 1936 or 1937 when a common garage was built 2 feet east of the line and that the placement of the two concrete strips on either side of the line was "a permanent grant of easement over each property to the other property for an easement for ingress or egress." In our opinion, these findings as summarized, including one in the nature of a finding contained in the conclusions, are the critical findings and there is substantial evidence to support them. It is enough if the critical findings are so supported. See *Johnson v. Safeway Stores, Inc.*, 1 Wn. App. 380, 461 P.2d 890 (1969). It is true that defendant complains that certain other findings are not supported by the evidence. We do not regard such other findings as critical.

■■ Defendants particularly claim that there is no evidence of agreement on a common boundary line in 1922 and that there is no evidence of later agreement under which the concrete strips were built. We disagree. The testimony of the plaintiff concerning the original agreement on the common boundary line and the testimony of her son concerning the recognition of the common boundary line when the concrete strips were to be installed, and long acquiescence therein by the respective property owners subsequent thereto, followed by the construction of the concrete strips and their subsequent uninterrupted use

from at least 1941 to 1962 for common driveway purposes, is sufficient evidence to support a finding of an agreed boundary line. It is true that the evidence of the plaintiff's son that he heard conversation between or among his mother, father and the next-door neighbor, defendants' predecessor, recognizing the common boundary line when the concrete strips were to be built, failed to identify the neighbor by name and the evidence failed to show whether he was the owner of the property he was occupying. However, plaintiff's son testified that the conversation and agreement concerning the common boundary line occurred among "Mr. Hanson and Mrs. Hanson and the property owners that were in the Lee house at the time before they laid out the center line . . . I was in the conversation." This testimony was not disputed. The failure to recollect the name of the neighbor goes to the weight of the testimony. Furthermore, the evidence showed the neighbor involved was in possession of the house and lot for whose partial benefit the concrete strips were being built. As the person in possession, he was presumptively the owner and could be dealt with as such by the plaintiff. *See* 42 Am. Jur. *Property* § 41 (1942); *Thomsen v. State,* 70 Wn.2d 92, 422 P.2d 824 (1966). *See also Gurley v. Arnstead,* 148 Mass. 267, 19 N.E. 389 (1889). It is well settled that

> where boundaries have been defined in good faith by the interested parties, and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference thereto, such boundaries will be considered the true dividing lines and will govern, and whether the lines as so established are correct or not becomes immaterial.

*Mullally v. Parks,* 29 Wn.2d 899, 906, 190 P.2d 107 (1948). *See also Waldorf v. Cole,* 61 Wn.2d 251, 377 P.2d 862 (1963); *Scott v. Slater,* 42 Wn.2d 366, 255 P.2d 377 (1953); 6 G. Thompson, Commentaries on the Modern Law of Real Property §§ 3034-36 (1962 Repl.); 2 H. Tiffany, The Law of Real Property §§ 653-54 (3d ed. 1939). The existence of an express agreement is not essential; an agreement implied from actions of the interested parties is sufficient. *Lamm v.*

*McTighe,* 72 Wn.2d 587, 593, 434 P.2d 565 (1967). The boundary line here involved was acquiesced in for the minimum ten year period required as in the case of adverse possession. *Waldorf v. Cole, supra; Scott v. Slater, supra.*

■ ■ The conclusion of law denominated as such concerning a permanent easement contains subject matter sufficiently factual in nature to be treated as a finding. *See Ferre v. Doric Co.,* 62 Wn.2d 561, 567, 383 P.2d 900 (1963); *see Gray v. Fuller,* 85 Wash. 13, 147 P. 402 (1915). To the extent that it is a finding, it is supported by evidence of a mutual agreement for the construction and the use of the concrete strips for the purposes of ingress and egress so as to justify the conclusion stated of "a permanent grant of easement over each property to the other property for an easement for ingress or egress." *See York v. Cooper,* 60 Wn.2d 283, 373 P.2d 493 (1962); 2 G. Thompson, Commentaries on the Modern Law of Real Property § 331, p. 117, and § 333, pp. 127-130 (1961 Repl.). No contention as to any procedural defect in the creation or duration of the easement has been advanced. The use to which the easement was subsequently put is evidence of the intent of the parties in establishing it. *See York v. Cooper, supra.*

Defendants next contend that the trial court erred in not dismissing this cause pursuant to RPPP 41.04W (now CR 41(b)(1)) requiring mandatory dismissal of the cause for failure to note the action for trial within 1 year "after any issue of law or fact has been joined." *Davis v. Smith,* 60 Wn.2d 720, 375 P.2d 397 (1962).

Plaintiff filed her complaint on March 30, 1965, directed to the defendants and the defendant builder employed to build the garage. The defendant builder filed no answer, but the defendants on May 11, 1965, filed their answer and counterclaim denominated as such. The counterclaim alleged that Bertha Hanson had no interest in the property and the title to the entire strip between the houses of the parties should be quieted in the defendants free of any claim of Bertha Hanson. The relief claimed by counterclaim was broader than the relief claimed in the complaint, *i.e.,*

that title be quieted in the plaintiff to her share of the driveway and garage. It was more than a general denial. Under RPPP 12(a) plaintiff was required to reply within 20 days. Plaintiff did not do so. However, defendants did not move for an order of default or otherwise object to the delay in filing a reply. Plaintiff filed her reply on January 18, 1966, praying *inter alia* "that plaintiff take judgment against the defendants as prayed for in her Complaint . . ." On July 25, 1966, more than 1 year after the filing of the defendants' answer and counterclaim, but approximately 6 months after the filing of the plaintiff's reply, defendants, relying on RPPP 41.04W served and filed a motion to dismiss the action for "want of prosecution" and accompanied the motion with a note for the motion docket.

RPPP 41.04W[1] is, in rule form, a particularized application of the court's inherent power to dismiss a civil action. *Bishop v. Hamlet,* 58 Wn.2d 911, 365 P.2d 600 (1961). This power is exercisable on a discretionary basis for unreasonable delay in prosecuting the action. Bancroft's Code Practice and Remedies, § 506 (1927). However, if the defendant asserts a counterclaim and unreasonably delays its prosecution, counterclaimant cannot prevail in his motion to dismiss because the counterclaimant is equally at fault for failing to bring the case to trial. *Welch v. McCoy,* 40 S.D. 273, 167 N.W. 159 (1918); *National City Bank v. International Trading Co. of America,* 167 Wash. 311, 9 P.2d 81 1932).

RPPP 41.04W, with one important exception, basically restates these rules. The common law rule was one of discretion but RPPP 41.04W requires mandatory dismissal if the facts constituting the claimed want of prosecution fall within its terms. *Burns v. Payne,* 60 Wn.2d 323, 373

[1]"(a) *Dismissal on Motion of Parties.* Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the *plaintiff, counter-claimant,* cross-claimant, or third-party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless *the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss.* Such motion to dismiss shall come on for hearing only after notice to the adverse party." (Italics ours.)

P.2d 790 (1962); *Davis v. Smith,* 60 Wn.2d 720, 375 P.2d 397 (1962). Much like the common law rule, RPPP 41.04W provides that the motion must be denied when "the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss." *Day v. State,* 68 Wn.2d 364, 413 P.2d 1 (1966). Moreover, by its express terms the rule applies to counterclaims and dismissal applies to "any civil action." The latter term is broad enough to include not only the claim for relief made by the complaint and joined by answer, but also an answer claiming affirmative relief joined by the reply. *See Thorgaard Plumbing & Heating Co. v. County of King,* 71 Wn.2d 126, 130, 426 P.2d 828 (1967); *see also* CR 2. Accordingly, the granting of a defendant's motion to dismiss would carry with it the counterclaim pleaded by the defendant in answer to the complaint. *See Washington Nat'l Bldg. Loan & Inv. Ass'n v. Saunders,* 24 Wash. 321, 326, 64 P. 546 (1901) *and Andrews v. E. E. Harkins Co.,* 142 Wash. 363, 253 P. 460 (1927).

RPPP 41.04W expressly applies to both complaints and counterclaims. It is not asking too much to imply similar obligations on both plaintiff and counterclaimant to dispose of the litigation with reasonable diligence in light of decisional law. *See Franks v. Douglas,* 57 Wn.2d 583, 358 P.2d 969 (1961). The plaintiff has a duty to bring on his claim for hearing or trial diligently (*State ex rel. Washington Water Power Co. v. Superior Court,* 41 Wn.2d 484, 250 P.2d 536 (1952); *State ex rel. Goodnow v. O'Phelan,* 6 Wn.2d 146, 106 P.2d 1073 (1940)) and the defendant who merely defends and seeks no affirmative relief merely plays a passive role and is under no obligation to assist the plaintiff to bring his claim for relief on for trial. *State ex rel. Washington Water Power Co. v. Superior Court, supra.* When, however, a counterclaimant becomes an actor by pleading his counterclaim, the counterclaimant comes under a duty to bring his counterclaim on for trial diligently. *See Storey v. Shane,* 62 Wn.2d 640, 384 P.2d 379 (1963); *Bishop v. Hamlet,* 58 Wn.2d 911, 365 P.2d 600 (1961); *Heck v. Kaiser*

*Gypsum Co.,* 56 Wn.2d 212, 215, 351 P.2d 1035 (1960); *National City Bank v. International Trading Co. of America,* 167 Wash. 311, 9 P.2d 81 (1932); and *Welch v. McCoy,* 40 S.D. 273, 167 N.W. 159 (1918). If he fails to do so, his violation of duty resulting in delay provides a defense to the plaintiff by the terms of the rule itself; the counterclaimant as well as the plaintiff has helped bring about the failure to have the action brought on for trial or hearing.

In the instant case, defendants were under an obligation to bring on their counterclaim filed May 11, 1965 for trial or hearing because a reply was required within 20 days. (RPPP 12(a)7). Defendant could have compelled compliance with this rule had the defendants moved for a default. Defendants did nothing. Had the reply been filed within 20 days, the entire action would have been at issue approximately June 2, 1965 and the 1 year period would have expired June 2, 1966. Instead the defendant-counterclaimant waited until July 26, 1966 before moving to dismiss the action. In computing the year, they counted the period between June 2, 1965 and January 17, 1966, a period of time during which the defendant-counterclaimant had themselves failed to move diligently to bring their counterclaim on for trial. Under these circumstances by the express language of the rule "the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss." The fact they were not the sole cause is immaterial. They clearly were a substantial cause. *See Welch v. McCoy, supra; National City Bank v. International Trading Co. of America, supra.* We find no error.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.